OPINION OF THE COURT
Arnold F. Ciaccio, J.
In this judicial settlement proceeding the court is requested to make a determination of claims against the estate by persons alleging an interest as tenants in common to real property commonly described as 163 Sawyer Street within the City of Rochester, New York. The executor seeking to have his accounts settled asks that the claimant’s request be denied and that the asset represented by the tenancy in common inure to the benefit of the estate’s charitable legatee, the Hillside Children’s Center. It should be noted that the real estate in question has been sold with the proceeds being held in escrow pending this court’s determination of the issue presented. The court has accepted counsel’s election to submit the issue without a hearing each relying on documentary material and briefs submitted.
BACKGROUND
Much of the factual matters herein involved are uncontroverted and go back in time for a period in excess of 50 years. Edith F. Kelley, the decedent, and her sister, Dorothy M. Kelley, acquired a residence at 163 Sawyer Street as tenants in common by a deed dated April 9, 1938 and duly recorded in the Monroe County Clerk’s office. The sisters resided together on those premises until approximately July 16, 1965 when decedent’s sister Dorothy M. Kelley married Edwin F. Horn. Dorothy Kelley Horn and her husband then took up residence together at 744 Thurston Road where she resided until her death in 1969. She left surviving her husband, Edwin, and no children. Edwin Horn died on August 16, 1974 and he was survived by his second wife, Mamie R. Horn. Edwin’s will duly admitted to probate in the Monroe County Surrogate’s Court on September 5, 1974 devised and bequeathed his entire residuary estate including the interest, if any, in the Sawyer Street realty to his surviving spouse, Mamie.
Mamie R. Horn died January 29, 1976 leaving a will that was admitted to probate in the Monroe County Surrogate’s Court on February 10, 1976 in which she bequeathed and *878 devised her entire estate in equal shares to her children, Donald B. McCoy, John D. McCoy, Albert Johnson and Juné J. Yungblut. It is these latter-named individuals and their heirs who are the claimants in the present proceeding. They trace their claim back through their mother Mamie, the husband Edwin and ultimately to Dorothy Kelley Horn as the successor owners of a one-half interest in the realty.
The surviving original tenant in common of the subject property, Edith F. Kelley, died January 16, 1987 leaving a will duly admitted to probate naming B. Andrew Dutcher, Esq., executor thereof giving her entire estate to the Hillside Children’s Center, a charitable beneficiary. That executor asserts that the original one-half interest in the subject realty matured by virtue of adverse possession into a fee interest and that accordingly the entire proceeds of the sale of the real estate are the entitlement of the Hillside Children’s Center under this decedent’s will.
It is uncontroverted that from July 16, 1965 until her death in 1987, Edith F. Kelley, the decedent, exclusively occupied and possessed the premises. She maintained, improved, paid all real estate taxes, water assessments and homeowner’s insurance policy without contribution.
LAW
It is the executor’s contention that the decedent’s exclusive occupancy of the subject real estate for a period in excess of 10 years creates a presumptive ouster of the tenant in common, Dorothy M. Horn. It is averred further that CPLR 212 (a), the Statute of Limitations for the recovery of real property, also bars the commencement of an action by successors in title to the subject premises.
RPAPL 541 provides as follows: "[w]here the relation of tenants in common has existed between any persons, the occupancy of one tenant, personally or by his servant or by his tenant, is deemed to have been the possession of the other, notwithstanding that the tenant so occupying the premises has acquired another title or has claimed to hold adversely to the other. But this presumption shall cease after the expiration of ten years of continuous exclusive occupancy by such tenant, personally or by his servant or by his tenant, or immediately upon an ouster by one tenant of the other and such occupying tenant may then commence to hold adversely to his cotenant. ” (Emphasis supplied.)
*879 Thus while it is clear that this statutory presumption does indeed exist for the 10-year period at which time it expires, nevertheless it is equally clear that the 10-year period triggers the possibility of adverse possession. It does not, however, establish adverse possession automatically. (Tarbox v Hulett, 272 App Div 633.) The time-honored principles and requisites for adverse possession as set forth by this State’s Court of Appeals in Hinkley v State of New York (234 NY 309 [1922]) require very obvious and overt acts which unmistakably repudiate a nonpossessory owner’s right by one possessing the property. (See, People’s Trust Co. v Smith, 215 NY 488; Culver v Rhodes, 87 NY 348.) Paying maintenance expenses and providing for upkeep, etc., have not been viewed as requisite acts sufficient to ripen into fee title by adverse possession. (Kraker v Roll, 100 AD2d 424.) Kraker (supra) sets forth a factual situation similar to the instant proceeding. There, one cotenant exclusively occupied a property for more than 13 years and then sold it to the exclusion of the other two cotenants. As in the instant proceeding, the person in possession of the property maintained the property, paid taxes and other expenses. The court held that those actions alone were not enough to show an intention to possess the property adversely to the cotenants. The court went on to hold that no notice of intention to hold the property open and notoriously and adversely to the right of other cotenants was displayed. This hostility of possession was never demonstrated until the attempt was made to sell the property.
In the case at bar, no claim of right was made by the tenant in possession until the executor attempted to sell the property without respondent’s consent in 1987. There appears to be nothing in this record to indicate that decedent during her lifetime did anything which would have repudiated the cotenant’s rights or to indicate that her possession was hostile. It is only after her death that the executor exerts this hostile position. Executorial action after death cannot create a state of mind of hostility and adversity attributable to decedent during her lifetime.
Accordingly, on the basis of the foregoing, the court denies the application in the petition which requests that the estate be determined to own a fee simple interest in 163 Sawyer Street on the basis of adverse possession. It holds that the respondent claimants are successors and rightful owners of Dorothy M. Kelley’s one-half undivided interest as tenants in common in and to the property referred to. In so holding, the *880 court denies the applicability of CPLR 212 (a), the Statute of Limitations with respect to the recovery of real property. (See, Graham v Graham, 45 Misc 2d 298.) It is the court’s view that no cause of action arose to cause the statute to run until 1987.
In addition to the foregoing, the court with respect to the other requests directs that property taxes paid by Edith F. Kelley not be deducted from the amount due respondents, and it directs that the respondents receive one half of all future mortgage payments. The court fixes a counsel fee payable from the estate for attorneys representing the respondents in the amount of $2,500 for services rendered by them with respect to the litigation herein. It denies any additional fees for services rendered relating to the sale of the property. Those and any other additional fees are the responsibility of respondents personally.