■ THOMAS COBRIN, Respondent, v VITO DELUNA et al., Defendants, and PERGAMENT HOME CENTERS, INC., et al., Appellants.—In an action to recover damages for personal injuries, the defendants Pergament Home Centers, Inc. and Pergament Distributors, Inc. appeal from a judgment of the Supreme Court, Nassau County (Roncallo, J.), entered September 30, 1987, which, upon an order of the same court dated September 1, 1987, granting the plaintiff's motion for leave to enter a judgment on a stipulation of settlement, is against them in the principal sum of $19,000.

Ordered that the judgment is reversed, on the law, with costs, the order is vacated, and the motion is denied.

In April 1982 the plaintiff brought an action to recover damages for personal injuries allegedly sustained by him while using a rotary paint stripper distributed and sold by the defendant Pergament Home Centers, Inc. (hereinafter Perga-

ment). Shortly thereafter, Pergament's insurer, the Ambassador Insurance Company (hereinafter Ambassador), was declared insolvent.

Pursuant to the "New Jersey Surplus Lines Insurance Guaranty Fund Act", which establishes a fund for payment of insurance claims against insolvent surplus-line insurers, the New Jersey Property-Liability Insurance Guaranty Association (hereinafter the Association) began processing the claims of a defined class of Ambassador policyholders, among them Pergament (NJ Stat Annot § 17:22-6.70 *et seq.*). Under the act, the Association assumes all of the "rights, duties, and obligations of the insolvent insurer" (NJ Stat Annot § 17:22-6.74 [a] [2]) and is authorized to "adjust, compromise, settle, and pay covered claims to the extent of the fund's obligation" (NJ Stat Annot § 17:22-6.74 [a] [4]).

Because the claims against Ambassador promised to exceed the moneys available in the fund, the Commissioner of Insurance exercised the authority invested in him by the Act (NJ Stat Annot § 17.22-6.74 [a] [1]) to issue an order dated May 29, 1985, directing that "[t]he [f]und shall immediately begin payment of Ambassador-related covered claims * * * in the amount of 40% of the principal amount of each such covered claim [; p]ayments in excess of 40% of covered claims shall not be made until further order of the Commissioner".

The Association assumed Pergament's defense in the instant negligence action, exercising complete control over the litigation for nearly four years. On the eve of trial, the plaintiff and counsel furnished by the Association agreed to settle the action against Pergament for a total of $20,000, to be paid as follows: "[T]he defendant Pergament will pay the sum of $1,000, 40 percent of the balance of the $20,000 payable within 60 days and the balance of 60 percent will be paid * * * [p]ursuant to the policy of the [Association]". Pergament did not actively participate in the making of the settlement.

Pergament was informed of the terms of the settlement and promptly made payment of $1,000 to the plaintiff. Shortly thereafter, the Association disclaimed coverage of Pergament claims and apprised the plaintiff that it would not make payment of $19,000 on Pergament's behalf. By letter dated June 15, 1987, the plaintiff's counsel advised Pergament that pursuant to the terms of the stipulation of settlement "the balance of $19,000 was to be paid by the New Jersey Property Insurance Guarantee Association", but that payment had not been made. Therefore, the plaintiff demanded that Pergament

make immediate payment of this sum. When Pergament refused to do so, the plaintiff sought and obtained a judgment against Pergament in the principal sum of $19,000.

A stipulation of settlement entered into in open court constitutes a binding contract which must be strictly enforced (see, Furgang v Epstein, 106 AD2d 609; Kraker v Roll, 100 AD2d 424, 436; Nishman v De Marco, 76 AD2d 360, 366). Where a dispute arises concerning the interpretation of a settlement for purposes of enforcement, general contract principles are applied to determine the intent and purpose of the parties.

We find that the stipulation in question did not bind Pergament to make any payment to the plaintiff in excess of $1,000 and therefore, did not support entry of a judgment against Pergament in the amount of $19,000 (see, Countryman v Breen, 241 App Div 392, affd 268 NY 643). The record examined as a whole unequivocally establishes that it was the intent and understanding of the parties that the Association, not Pergament, contracted to pay the plaintiff $19,000. The stipulation plainly incorporates the order of the Commissioner of Insurance directing the Association to limit payment of covered claims from the proceeds of the reserve fund to 40% of the principal amount pending further instructions. Moreover, the letter written by the plaintiff's counsel manifests a clear understanding of the parties' intention at the time the stipulation was entered that the Association would make payment of $19,000 to the plaintiff. The plaintiff assumed the risk of the Association's default by agreeing to the terms of the instant settlement which limited Pergament's liability to payment of $1,000. In the absence of a provision requiring Pergament to make payment in the event of the Association's default, the court could not make Pergament the Association's guarantor.

There is no merit to the plaintiff's contention that Pergament's failure to object to the terms of the stipulation prior to entry of judgment operates as an estoppel (see, Countryman v Breen, supra). It was in Pergament's interest to have the Association settle the case within the limits of the fund's coverage and to thereby avoid the risk of exposure to a jury verdict in excess of coverage. Thus, there was no reason for Pergament to object to the favorable settlement limiting its liability to payment of $1,000 with the balance of $19,000 to be paid from the fund. Mollen, P. J., Brown, Rubin and Kooper, JJ., concur.