Russian Orthodox Convent Novo-Diveevo, Inc. v Sukharevskaya (2018 NY Slip Op 08167)





Russian Orthodox Convent Novo-Diveevo, Inc. v Sukharevskaya


2018 NY Slip Op 08167


Decided on November 28, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 28, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
MARK C. DILLON
JEFFREY A. COHEN
COLLEEN D. DUFFY
FRANCESCA E. CONNOLLY, JJ.


2015-02779
 (Index No. 4557/08)

[*1]Russian Orthodox Convent Novo-Diveevo, Inc., appellant, 
v
Maria (Lydia) Sukharevskaya, respondent, et al., defendant.


Feerick Lynch MacCartney, PLLC, South Nyack, NY (Donald J. Feerick, Jr., and Alak Shah of counsel), for appellant.
Legal Aid Society of Rockland County, Inc., New City, NY (Alexander Bursztein and James K. Riley of counsel), for respondent.



DECISION & ORDER
In an action, inter alia, for ejectment and to recover damages for use and occupancy, which was consolidated with summary proceedings to evict the defendants from the subject premises, the plaintiff appeals from a judgment of the Supreme Court, Rockland County (Robert M. Berliner, J.), entered January 7, 2015. The judgment, insofar as appealed from, after a nonjury trial, is in favor of the defendant Maria (Lydia) Sukharevskaya and against the plaintiff dismissing the summary proceeding and the complaint insofar as asserted against that defendant.
ORDERED that the judgment is affirmed insofar as appealed from, with costs.
The plaintiff, the Russian Orthodox Convent Novo Diveevo, Inc. (hereinafter the convent), operates a church and convent on its property in Nanuet. The defendant Maria (Lydia) Sukharevskaya (hereinafter the defendant) is a nun who has resided at the convent since 1999.
In or around 2003, the defendant complained to her superiors about sexual misconduct by one of the convent's priests. In or about 2005, the ruling bishops directed the defendant to vacate the convent property. When she refused to do so, an ecclesiastical court in June 2006 disciplined her by making her ineligible to wear religious garb and to receive communion for a two-year period. The defendant continued to complain of sexual harassment by the resident priest. In 2008, an ecclesiastical court permanently defrocked the defendant and, on that basis, disallowed her continued residency at the convent.
In January 2006, the convent commenced summary proceedings in the Justice Court for the Town of Clarkstown to evict the defendant and another similarly situated nun who is now deceased and not a party to this appeal. In May 2008, the convent commenced an action in the Supreme Court, Rockland County, inter alia, for ejectment and to recover damages for use and occupancy against the defendant and the other nun. In September 2008, the Supreme Court [*2]consolidated the action with the summary proceedings and thereafter conducted a nonjury trial. The court determined, inter alia, that the defendant had established an equitable defense to her eviction and ejectment. In particular, it determined that the proceedings and findings of the ecclesiastical court were in retaliation for the sexual misconduct allegations. As a result, the court dismissed the summary proceeding and the complaint insofar as asserted against the defendant. The convent appeals.
"The First Amendment forbids civil courts from interfering in or determining religious disputes, because there is substantial danger that the state will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrines or beliefs" (Matter of Congregation Yetev Lev D'Satmar, Inc. v Kahana, 9 NY3d 282, 286; see Matter of Ming Tung v China Buddhist Assn., 124 AD3d 13, 18, affd 26 NY3d 1152). A court may, however, properly preside over a dispute involving a religious body only when the dispute may be resolved utilizing neutral principles of law (see Jones v Wolf, 443 US 595; First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am., 62 NY2d 110, 119-121; Matter of Ming Tung v China Buddhist Assn., 124 AD3d at 18; Kelley v Garuda, 36 AD3d 593, 595).
Here, the summary proceedings for eviction and the action, inter alia, for ejectment are inextricably intertwined with the determinations of the ecclesiastical court, particularly its 2008 determination defrocking the defendant and ordering her to vacate the convent. Therefore, this consolidated action involves review of an ecclesiastical determination that may not be resolved by resort to neutral principles of law (see Matter of Congregation Yetev Lev D'Satmar, Inc. v Kahana, 9 NY3d at 286-288; Matter of Ming Tung v China Buddhist Assn., 124 AD3d at 19). Moreover, this matter does not involve a purely religious determination requiring this Court to accept the actions of the ecclesiastical court as final and binding (cf. Serbian Eastern Orthodox Diocese for United States and Canada v Milivojevich, 426 US 696).
Indeed, the resolution of the consolidated action necessarily involves an assessment of the propriety of the defendant's defrockment in light of her allegations of sexual misconduct against a priest. Therefore, the convent's claims are nonjusticiable, as any such resolution of them would involve an impermissible inquiry into religious doctrine or practice (see Matter of Congregation Yetev Lev D'Satmar, Inc. v Kahana, 9 NY3d 282; Rodzianko v Parish of the Russian Orthodox Holy Virgin Protection Church, Inc., 117 AD3d 706). In Matter of Congregation Yetev Lev D'Satmar, Inc. v Kahana (9 NY3d 282), two sons, who were the respective heads of separate congregations in Brooklyn and in Monroe, each sought to succeed Grand Rabbi Moses Teitelbaum as leader of the broader Orthodox Jewish Satmar community. After the death of Grand Rabbi Moses Teitelbaum, a bitter feud erupted between supporters of his elder son, Aaron, who was the Chief Rabbi of the Monroe congregation, and supporters of his younger son, Zalman, Chief Rabbi of the Brooklyn congregation. This feud resulted in the Brooklyn congregation splitting into two rival factions. Each faction conducted a separate election, and each sought to have the election favorable to it recognized as legitimate. The petitioners sought to validate the election they favored on the ground that neutral principles of law could be applied to resolve the dispute, including such neutral concepts as election notice and quorum requirements. However, the first of the disputed elections resulted in the designation of Berl Friedman as the congregation's President. The record contained conflicting evidence as to whether Friedman, prior to the election, had earlier been removed and expelled from the congregation by the Grand Rabbi which, in turn, would affect whether Friedman could legitimately be named as its President. A 3-1 majority of this Court, and all but one judge of the Court of Appeals, held that because Friedman's religious standing within the congregation was ecclesiastical in nature, the dispute between the two factions involved more than notice and quorum challenges and, thus, could not be determined on the basis of neutral principles of law. As a result, the matter was not justiciable in the state courts, and the Satmar sect was left to its own devices to internally resolve its leadership issues (see id. at 288). This case highlighted the fact that not all disputes are justiciable. Moreover, there are other types of cases where courts will likewise not get involved in disputes, such as, for example, those involving political questions to be resolved entirely by another branch of government on its own (see Powell v McCormack, 395 US 486, 518; Matter of Gottlieb v Duryea, 38 AD2d 634, 635, affd 30 NY2d 807).
Matter of Congregation Yetev Lev D'Satmar, Inc. v Kahana is instructive on the current appeal and is the closest precedent that we have to guide our decision. Both in that case and here, central figures in the parties' dispute were stripped, or allegedly stripped, of religious membership in their congregations. In both cases, whether or not the central figures were properly stripped of their religious memberships directly affected the secular issue before the Supreme Court. In Matter of Congregation Yetev Lev D'Satmar, Inc. v Kahana, the issue was whether to recognize the civil validity of an election. Here, the issue is whether to order the evictions/ejectments of the defendant. In the cited case, Berl Friedman's membership status in the Satmar Congregation was an issue that prohibited the state court from resolving an election that would otherwise have been subject to neutral principles of law. Similarly, in this matter, the ecclesiastical issues related to the defendant's suspensions and defrockments should prohibit the state court from resolving the ejectment action that might otherwise have been subject to neutral principles of law. In other words, the various conflicting issues in this matter, which prominently include, but are not limited to, ecclesiastical determinations, are so intertwined with one another that our Court should not be expected to disentangle them.
Cases cited by the dissent to support a contrary conclusion, such as Serbian Eastern Orthodox Diocese for United States and Canada v Milivojevich (426 US 696), are not controlling. That case, in particular, did not involve an intertwining of an ecclesiastical determination and neutral principles of law. The circumstances here are different.
If this Court were to engage in a process here of disentangling the ecclesiastical issues from the civil law issues, we would impermissibly be inserting ourselves into matters of an ecclesiastical nature. As the rival factions in Matter of Congregation Yetev Lev D'Satmar, Inc. v Kahana were obligated to resolve their election dispute without assistance from the courts, so too here, the convent and the defendant are obligated to resolve the issues surrounding the defendant's defrockment and residence. Accordingly, we affirm the Supreme Court's dismissal of the summary proceeding and the complaint insofar as asserted against the defendant and deny the convent's request for court intervention to effect their ejectment of the defendant from the premises, albeit on the ground that the consolidated action is nonjusticiable.
Additionally, in the context of the summary proceeding against the defendant, the convent failed to submit any proof that the defendant, as a licensee of the convent property, was properly served with a 10-day notice to quit, as required by statute (see RPAPL 713[7], 735).
Accordingly, the summary proceeding and the complaint were properly dismissed insofar as asserted against the defendant.
RIVERA, J.P., DILLON and DUFFY, JJ., concur.
CONNOLLY, J., concurs in part and dissents in part, and votes to modify the judgment, on the law, by deleting the provision thereof dismissing the cause of action for ejectment insofar as asserted against the defendant Maria (Lydia) Sukharevskaya, and substituting therefor a provision in favor of the plaintiff and against the defendant Maria (Lydia) Sukharevskaya on the cause of action for ejectment, and as so modified, to affirm the judgment insofar as appealed from, with the following memorandum, in which COHEN, J., concurs:
In my view, the plaintiff established its entitlement to judgment in its favor on its cause of action to eject the defendant Maria (Lydia) Sukharevskaya (hereinafter the defendant) from the subject premises.
A cause of action for ejectment may be maintained by the owner of real property against a person who wrongfully remains in possession of the property, or who wrongfully claims superior title to the property (see City of Syracuse v Hogan, 234 NY 457, 462; 5 Warren's Weed, New York Real Property § 41.16 [2018]). Here, at trial, the plaintiff established, prima facie, that it is the owner of the property, that it requested the defendant to vacate the property, and that the defendant failed to do so. Thus, the burden shifted to the defendant to negate an element of the [*3]plaintiff's proof or establish a defense to the action.
The defenses to a cause of action for ejectment are extremely limited, and include, for example, establishing that title is actually vested in the defendant by instrument (see Hall v La France Fire Engine Co., 158 NY 570, 575) or adverse possession (see French v Wray, 166 App Div 471, 472, affd 220 NY 604), that title is actually vested in a third party (see Jackson v Goes, 13 Johns 518), or that the defendant has acquired the right to occupy the property by agreement (see Sample v Lyons, 59 App Div 456, 458). Although ejectment is an action at law, courts have held that a defendant may raise equitable defenses to it (see Kraker v Roll, 100 AD2d 424, 432; Miceli v Riley, 79 AD2d 165, 168-169). However, this Court has noted that equity has been invoked in an ejectment action only where the plaintiff has acted inequitably or failed to act "when he [or she] knew, or should have known, that something was amiss with respect to his [or her] property rights" (Miceli v Riley, 79 AD2d at 169; see Kraker v Roll, 100 AD2d at 432-433). In those cases where equity has been invoked, the remedy typically involves compensating a defendant who inadvertently improved the plaintiff's property (see Berney v Brodie, 26 AD2d 679, 679; Roller v Frankel, 9 AD2d 24, 27).
Here, the defendant claimed that the plaintiff wrongfully defrocked her in retaliation for making complaints of sexual harassment against a priest, and failed to comply with its own procedures and afford her due process in the defrocking proceeding. However, even assuming the defendant's claims are true, she failed to establish a defense to ejectment. Specifically, the defendant failed to establish that had she not been defrocked (i.e., if she remained in good status as an ordained nun), she would have enjoyed a legally enforceable right to remain and live at the property in perpetuity. Indeed, the convent's regulations provide: "One must remember that the cell occupied by the nun is not her property, but is part of the convent." Under these circumstances, the defendant's defrocking has no bearing on whether the plaintiff was entitled to eject her from the property. Absent, for example, an agreement legally entitling nuns in good standing to reside on the property, the plaintiff could presumably eject any nun from its property, whether or not she was in good standing with the church. Although the defendant may have legitimate claims that her 2008 defrocking was improper, perhaps entitling her to pursue some other judicial remedy, resolving those claims in her favor would not constitute a defense to ejectment. Further, even assuming that the plaintiff acted inequitably toward the defendant in defrocking her, the defendant failed to demonstrate that the plaintiff acted inequitably vis-à-vis its property rights, such that equity should be invoked to deny the plaintiff the right to exclude the defendant from its property (cf. Joanes v Boyle, 275 App Div 952, 952). Accordingly, in my view, the plaintiff established its entitlement to eject the defendant.
Under the foregoing analysis, it is unnecessary to reach the issue of whether the defendant's defrocking was improper. In any event, assuming, as the majority decides, that the propriety of the defendant's defrocking in some way bears on her right to remain on the property, I agree with the majority that the defendant's contentions regarding her 2008 defrocking cannot be resolved utilizing neutral principles of law. However, I disagree with the majority's conclusion that the religious nature of the parties' dispute compels dismissal of the complaint. Rather, under the circumstances of this case, the neutral-principles-of-law doctrine requires that this Court treat the ecclesiastical court's determination to defrock the defendant as binding upon the parties. "[T]he First and Fourteenth Amendments permit hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters" (Serbian Eastern Orthodox Diocese for United States and Canada v Milivojevich, 426 US 696, 724). "[W]henever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them" (Watson v Jones, 80 US 679, 727 [emphasis added]; see Jones v Wolf, 443 US 595, 602; Serbian Eastern Orthodox Diocese for United States and Canada v Milivojevich, 426 US at 724-725; First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am., 62 NY2d 110, 113).
In Serbian Eastern Orthodox Diocese for United States and Canada v Milivojevich [*4](426 US at 703-704), after the defendant Dionisije Milivojevich, a bishop of the American-Canadian Diocese of the Serbian Orthodox Church, inter alia, refused to accept and implement a diocesan reorganization dictated by the mother church, Milivojevich was defrocked by the mother church (see id. at 698, 703-704). The Illinois Supreme Court, interpreting the mother church's constitution and penal code, held that the defrocking was arbitrary and reversed the ecclesiastical determination, effectively reinstating Milivojevich as a bishop (see Serbian E. Orthodox Diocese for U.S. & Can. v Milivojevich, 60 Ill 2d 477, 328 NE2d 268, revd 426 US 696). The United States Supreme Court found that this was error, holding that the Illinois Supreme Court "impermissibly substitute[d] its own inquiry into church polity and resolutions" (Serbian Eastern Orthodox Diocese for Unied States and Canada v Milivojevich 426 US at 708). "[I]t is the essence of religious faith that ecclesiastical decisions are reached and are to be accepted as matters of faith whether or not rational or measurable by objective criteria" (id. at 714-715). Accordingly, the Supreme Court held that the courts of Illinois were required to accept the mother church's defrocking of Milivojevich as binding upon them (see id. at 724-725). Similarly, in the case at bar, where the plaintiff's defrocking of the defendant goes to the essence of religious faith, this Court is required to accept that ecclesiastical determination as binding.
The majority cites Matter of Congregation Yetev Lev D'Satmar, Inc. v Kahana (9 NY3d 282, 284) as support for its conclusion that any judicial intervention in the instant dispute is impermissible, leaving the matter for the parties to resolve among themselves without the assistance of the courts. However, the majority's reliance on Kahana is misplaced. In that case, rival factions of Congregation Yetev Lev D'Satmar of Kiryas Joel, Inc., held separate elections to elect a board of directors, resulting in the election of two different slates of directors each claiming to be the one duly elected governing board of the congregation (see id. at 284-285). Resolution of which faction had the authority to conduct the election involved, inter alia, whether certain members of the congregation had been denounced or expelled for failing to follow "the ways of the Torah" (id. at 288). The Court of Appeals found that these issues of membership involved matters of an ecclesiastical nature that "must be resolved by the members of the Congregation," rendering the dispute nonjusticiable (id.). Unlike in Kahana, where the heart of the dispute concerned which faction controlled the church, in the case at bar, there is no dispute that the plaintiff's hierarchical structure grants its ecclesiastical court the authority to determine who may be a member of its clergy. Moreover, in Kahana, "there [was] no religious tribunal [for the Court] to defer to" (id. at 288 [Smith, J., dissenting]), whereas here, there is no question that the plaintiff possessed the religious authority to defrock the defendant, making its determination entitled to judicial deference.
Nevertheless, I reiterate my original position that this case should be decided under neutral property-rights principles, and that the religious nature of the parties' dispute is a red herring, which serves to distract this Court from deciding the controversy before it. The consequence of the majority's determination is that the parties remain in limbo, without any means to resolve their property dispute. While the majority holds that the parties must find a way to resolve the dispute on their own, the very existence of this lawsuit proves that they cannot. The majority's determination effectively converts the defendant's license to reside at the property into a life estate in complete derogation of the plaintiff's rights as a real property owner.
I agree with the majority's analysis that the consolidated summary proceeding against the defendant was properly dismissed for failure to establish that the plaintiff served the defendant with a statutory 10-day notice to quit.
Accordingly, I would modify the judgment appealed from by awarding judgment in favor of the plaintiff and against the defendant Maria (Lydia) Sukharevskaya on the cause of action for ejectment.
ENTER:
Aprilanne Agostino
Clerk of the Court