Charles J. Mandia, Respondent, v King Lumber and Plywood Co., Inc., et al., Appellants.

Second Department, April 20, 1992

---

## APPEARANCES OF COUNSEL

*Gaines & Kellman (Peter Carparelli* of counsel), for appellants.

*Bruce C. Mandia (William Maker, Jr.,* of counsel), for respondent.

## OPINION OF THE COURT

O'BRIEN, J.

 The issue presented on this appeal is whether the defendants abused an easement over a private roadway on the plaintiff's property. The roadway, which was described as a narrow dirt lane prior to 1981, was transformed by the defendants into a paved street about 50 feet wide, accommodating tractor-trailer traffic to their lumberyard. We agree with the trial court's conclusion that the defendants did indeed abuse their right-of-way over the plaintiff's property and that they are required to restore the roadway to its former condition. However, in view of the broad language of the easement grant, the court erred in limiting the defendants' future use of the roadway to four-wheel vehicles. Further, punitive damages were improperly assessed against the defendants.

I

The roadway involved in this case appears on a 1955 map of the property of Anthony Mandia as Mandia Lane, a 50-foot-wide road through a subdivision of single-family homes in the Town of Lewisboro. In dispute is only that portion of Mandia Lane which runs east to west and connects a public road, Park Avenue, with a lumberyard owned by the defendants. No issue is raised on appeal with respect to title or easement rights over the remaining portion of the road. The plaintiff, Charles Mandia, owns property bordering Mandia Lane on the south and claims title to the roadbed of Mandia Lane as well.

The parties' respective interests in Mandia Lane can best be understood by considering its 50-foot-wide roadbed as three distinct parallel strips: the northernmost 20 feet, referred to as the "reserve" strip; the middle strip of 20 feet, over which

the defendants have an uncontested easement; and the southernmost strip of 10 feet.

In 1912, Charles and Mary Hunt conveyed the property which is now the site of the lumberyard to Katonah Lumber Coal and Feed Company (hereinafter Katonah Lumber), together with a right-of-way over a 20-foot strip of land connecting the property to a public street. That 20-foot strip was described as follows: "TOGETHER with a right of way twenty (20) feet in width over a strip of land from the Northwesterly corner of the above described premises, running westerly to the highway, which strip of land is bounded as follows: BEGINNING at a northwesterly corner of the above described premises at the center of a new street as same is now laid out; thence running westerly along the center line of said street as the same is now laid out adjoining land of David Jennings and past land of St. Joseph's Roman Catholic Church, to the highway in front of said church running north and south; thence southerly along said highway twenty (20) feet to other lands of the party of the first part hereto; thence Easterly along other lands of the party of the first part to a stone monument set in the ground on the westerly line of the premises above described; thence Northerly twenty (20) feet to the point and place of beginning. With a right to travel over said street or strip of land above described at all times". The parties agree that the easement conveyed in this deed was over the middle 20-foot strip of Mandia Lane. The easement granted "a right to travel over said street or strip of land * * * at all times". The defendants claim use of the right-of-way as the successors in interest of Katonah Lumber.

The evidence established that the easement granted to Katonah Lumber in 1912 did not include a right-of-way over the northernmost 20-foot "reserve" strip. Indeed the Hunts did not own the "reserve" strip at that time. Mary Hunt subsequently obtained title through a deed dated August 28, 1918, for "highway purposes". The plaintiff claims title to the entire 50-foot roadbed of Mandia Lane based in part on a 1925 deed between his father, Anthony Mandia, and the Hunts' heir, Benjamin L. Hunt, and his wife Fannie Hunt.

Prior to 1981, use of Mandia Lane was primarily residential. Commercial access to the lumber yard was mainly via public streets. At some point in 1980 the defendants unilaterally began to expand their use of Mandia Lane. They widened the roadbed by removing trees and shrubbery. Trucks including tractor-trailers began to use Mandia Lane on a daily basis for

deliveries to and from the lumber yard. The trucks were loaded and unloaded from the road by fork lift and also sometimes parked on the road overnight.

On or about December 27, 1984, the plaintiff commenced the instant action against the defendants to recover damages for trespass and conversion of his lands, and for injunctive relief. The amended complaint alleged, *inter alia,* that on or about December 24, 1984, the defendants trespassed upon the southernmost 10-foot strip and the 20-foot "reserve" strip and removed earth, gravel, and rocks, flattening the natural terrain, killing and damaging trees, destroying surveyor's monuments and constructing a driveway and parking area for use by the defendants, their employees and invitees, thereby enlarging the 20-foot dirt road to 50 feet. The plaintiff sought a total of $302,500 in compensatory damages, $102,500 in punitive damages, and an injunction permanently restraining the defendants from trespassing on the 20-foot "reserve" strip and the southernmost 10-foot strip, from constructing, maintaining, and using a driveway and parking area on the lands owned by the plaintiff, and from removing gravel, earth, and rocks.

In their answer, the defendants disputed the plaintiff's claim to ownership of the 20-foot "reserve" strip and the 10-foot southernmost strip. The defendants further claimed an easement by prescription over the property. The defendants counterclaimed for $155,000 in compensatory damages and $155,000 in punitive damages. In the summer of 1985, while this suit was pending, the defendants proceeded to pave the entire 50-foot roadway.

Following a nonjury trial, the court determined that the plaintiff was the fee owner of the 20-foot "reserve" strip, the 20-foot strip including the easement, and the 10-foot southernmost strip. The court determined that defendants' use of the easement for the parking, loading, and unloading of large, commercial vehicles was unreasonable and an abuse of the right-of-way and, as a result, prohibited, enjoined, and restrained "any such further use". The injunction further restricted the defendants' use of the easement to four-wheel vehicles only.

The court further found that the defendants unlawfully trespassed upon the property of the plaintiff and converted it to their own use, and directed the defendants to restore the plaintiff's property to its former condition based on its deter-

mination that paving and erecting obstructions upon the plaintiff's property increased the burden of the easement. Finally, the court awarded the plaintiff $25,000 as punitive damages for the defendants' willful and flagrant abuse of the plaintiff's property rights.

## II

■ On appeal, the defendants contend that the court erred in finding that the plaintiff owns the entire 50-foot roadbed of Mandia Lane and impermissibly relied on hearsay evidence, namely a title report, in reaching that conclusion. The report, which was prepared in 1983 at the behest of the Town Board of Lewisboro in order to determine ownership of Mandia Lane, stated that the plaintiff owned the "reserve" strip. We agree that the court erred in admitting the title report in evidence, since a proper foundation was not laid for its admission. However, the error was harmless in light of the other documentary evidence admitted at the trial.

Documentary evidence at the trial established that an unnamed 40-foot road described in the 1925 deed to Anthony Mandia consisted of the two 20-foot strips. The width of the road on paper was expanded to 50 feet in a 1955 subdivision map and was named Mandia Lane. It is conceded by the defendants that the 1925 deed included the southernmost 10-foot strip, which did not become part of the roadway until 1955. In addition the 1925 deed included: "all the right, title and interest the party of the first part [the Hunts] may have in and to one-half of the road adjoining on the north of the premises herein described. Together with all the right, title and interest of the party of the first part of, in and to a right-of-way leading from the premises herein described over lands of the Katonah Lumber, Coal and Feed Company to the main highway". It is evident that what the Hunts conveyed to Anthony Mandia by this deed was their fee interest in the so-called "reserve" strip which Mary Hunt had purchased in 1918 for "highway purposes" and whatever interest they might have remaining in the "right-of-way" which Charles and Mary Hunt had conveyed to Katonah Lumber in 1912.

What the 1912 deed had conveyed to Katonah Lumber was an easement allowing it and its successors in interest to travel over the middle strip of 20 feet. When Charles and Mary Hunt granted this easement to Katonah Lumber in 1912, they retained ownership of the strip of land which was subject to

the easement. Title to this strip of land was transferred to Anthony Mandia in the 1925 deed.

It should also be noted that by a 1983 deed, Charles J. Mandia obtained exclusive title to the entire roadbed of Mandia Lane from the other successors in interest of his father and mother.

Thus, the deeds amply proved that the plaintiff Charles J. Mandia owns Mandia Lane and that the defendants have an easement over only 20 feet thereof.

The defendants contend nevertheless that, even if the plaintiff has title to the entire roadbed, they acquired an easement by prescription over the plaintiff's property. It is well settled that in order for the use of another's property to ripen into an easement by prescription, it must be adverse, open and notorious, and continuous and uninterrupted, for the requisite time period *(see, Reiss v Maynard,* 148 AD2d 996; *Susquehanna Realty Corp. v Barth,* 108 AD2d 909; *Caswell v Bisnett,* 50 AD2d 672)*, which in this case is 10 years (RPAPL 311). It is fundamental that the party claiming an easement has the burden of establishing these elements by clear and convincing evidence *(see, Reiss v Maynard, supra; Caswell v Bisnett, supra; Battista v Pine Is. Park Assn.,* 28 AD2d 714, 715). A review of the record reveals that the defendants have not shown that their adverse use, tacked on to the claimed adverse use of their predecessor in interest, was continuous and uninterrupted or that it was open and notorious for the statutory period.

The pertinent time period in the instant action is the 10 years prior to commencement of the action—December 1974 to December 1984. The defendants only acquired an interest in the property in 1977. The only testimony regarding the use of Mandia Lane prior to 1977 was from Robert Monk, a salesperson for a wholesale millwork company, who testified that he visited the lumberyard once or twice a year from 1962 through 1975 and had observed some 18-wheel trucks travel over Mandia Lane. He did not recall if he had observed any 18-wheel trucks travel over the road since 1975. Aside from Monk, no other witness testified to the alleged commercial use of Mandia Lane by the defendants prior to 1981. Although the use need not be on a daily basis, it must be such that an owner of the land would or should recognize a hostile claim being asserted *(see, McCann v Ryan,* 92 AD2d 656, 657). The defendants' use of the road for 18-wheel vehicles as testified to

by Monk hardly qualified as "open and notorious". The overwhelming evidence presented at the trial established that the defendants' commercial use of Mandia Lane began in 1981, when the dirt road was broadened and later paved.

Moreover, in the case of a prescriptive easement, the right acquired is measured by the extent of the use *(see, Reiss v Maynard,* 148 AD2d 996, *supra).* Thus, defendants could acquire an easement only equal in width to that portion of the land actually used during the prescriptive period *(Reiss v Maynard, supra).* While it is undisputed that the 20-foot right-of-way was used by the defendants, they failed to establish their use of the additional 20-foot "reserve" strip or the southernmost 10 feet of Mandia Lane prior to its paving. No definitive proof was offered to support the defendants' claim that the original dirt road meandered into the "reserve" strip. The defendants' witness, Peter Lockwood, a vice-president of the defendant King Lumber and Plywood Co., Inc., testified that he could not remember where the roadbed was or its width in 1977. Therefore, the trial court properly determined that the defendants did not obtain an easement by prescription over the "reserve" strip or the 10-foot southernmost strip and are limited to the easement over the middle 20-foot strip of Mandia Lane granted in the 1912 deed.

### III

■ The evidence at the trial, particularly the testimony of the plaintiff's neighbors on Mandia Lane, supports the court's determination that the defendants' use of the easement granted in the 1912 deed was unreasonable. In light of the defendants' flagrant abuse of their rights under the easement, we find that the trial court did not err in requiring the defendants to restore the roadbed to its prior condition. We further note that no issue is raised on appeal with respect to that part of the court's judgment. However, the defendants do contend on appeal that the court erred in restricting their future use of the easement to four-wheel vehicles, in view of the broad language in the 1912 deed. The relevant language grants "a right of way twenty (20) feet in width over a strip of land from the Northwesterly corner of the above described premises * * * at the center of a new street as same is now laid out; thence running westerly * * * to the highway * * * With a right to travel over said street or strip of land above described at all times".

An instrument creating an estate or interest in real property must be construed according to the intent of the parties, insofar as the intent can be gleaned from the instrument as a whole *(see, Village of Larchmont v City of New Rochelle,* 100 Misc 2d 463, 465-466). A grantor of an easement may create an extensive or a limited easement *(see, Morgan v Bolson Realty Corp.,* 48 AD2d 331, 333). The extent of an easement claimed under a grant is generally determined by the language of the grant *(see, Phillips v Jacobsen,* 117 AD2d 785, 786). Moreover, the terms of the grant are to be construed most strongly against the grantor in ascertaining the extent of the easement *(see, Circuit City Stores v Muss,* 151 AD2d 714, 715; *Phillips v Jacobsen, supra).*

Here, the language in which the grant of the easement is couched is very broad. There is no language in the grant, express or implied, which restricts or qualifies its use other than for a means of entrance and exit from the defendants' property to Park Avenue. Nothing in the language suggests that the use was to be restricted to any particular mode of ingress and egress *(see, e.g., Arnold v Fee,* 148 NY 214, 217; *953 Realty Corp. v Southern Blvd. Realty Corp.,* 50 AD2d 731). Moreover, where an easement is created by express grant and its sole purpose is to provide ingress and egress, but it is not specifically defined or bounded, "the rule of construction is that the reservation refers to such right of way as is necessary and convenient for the purpose for which it was created" *(Village of Larchmont v City of New Rochelle, supra,* at 466; *see also, Minogue v Kaufman,* 124 AD2d 791, 792), and includes "any reasonable use to which it may be devoted, provided the use is lawful and is one contemplated by the grant" *(Phillips v Jacobsen, supra,* at 786). Considering that this easement was granted to provide access from Park Avenue to a lumberyard, a reasonable use of the easement would include the right to receive and deliver merchandise via Mandia Lane by means of vehicles other than four-wheel motor vehicles *(see, e.g., 953 Realty Corp. v Southern Blvd. Realty Corp., supra)* provided the width of these vehicles allows them to fit within the 20-foot limit of the easement *(see, Dalton v Levy,* 258 NY 161, 167). The record fails to support the court's imposition of the four-wheel vehicle restriction on the defendants' use of the easement.

## IV

The remaining issue is whether the court erred in

assessing punitive damages against the defendants. In their pleadings, the parties sought compensatory damages and punitive damages. During the trial, however, the parties orally stipulated to withdraw all claims for monetary damages. The defendants contend that the stipulation precluded an award of punitive damages while the plaintiff counters that the intent of the stipulation was to withdraw only claims for compensatory damages. We find the defendants' contention persuasive and modify the judgment to delete the award of punitive damages.

Parties may by stipulation shape the facts to be determined at trial and thus circumscribe the relevant issues for the court *(see, Nishman v De Marco,* 76 AD2d 360, 368). "A stipulation is a contract between parties, and as such is governed by general principles for its interpretation and effect" *(Nishman v De Marco, supra,* at 366; *see, Kraker v Roll,* 100 AD2d 424, 436). The role of the court, as in an interpretation of any contract, is to determine the intent and purpose of the stipulation *(see, Matter of O'Brien v Assessor of Town of Mamaroneck,* 20 NY2d 587, 594; *Kraker v Roll, supra).*

The parties agreed that "[just] the monetary damages were being withdrawn by all the parties". The plaintiff's attorney noted that "there are money damages on both sides and that is being withdrawn". After further discussion, the court stated its understanding that the parties "stipulated that neither of [you] are seeking actual money damages", to which the plaintiff assented. While it is clear that the parties intended to withdraw claims for compensatory damages, there is no express mention of punitive damages in the stipulation or colloquy with the court.

Where the terms of a stipulation are ambiguous, the stipulation will be construed so as to avoid interpreting the agreement in such a fashion as to highlight the ambiguity *(see, Comity Realty Corp. v Peterson,* 118 Misc 2d 796, 797). Thus, "[w]hen a court analyzes a stipulation which has more than one possible meaning, and where one or more of the possible interpretations will result in a consequence which the proof might not sustain and which seems unusual in the circumstances of the case, the court should be careful not to apply the broader interpretation absent a clear manifestation of intent" *(Kraker v Roll,* 100 AD2d 424, 438, *supra).* In this case it can be said with some degree of certainty that the parties intended that *all* claims of monetary damages, both actual and punitive, be withdrawn.

It is apparent, from a review of the entire record, that both the parties and the court viewed the stipulation as limiting the evidence and the issues to the length and width of the easement, who had the right to travel on that easement, and how it could be used. Based on the language used by the parties in the stipulation, and the circumstances surrounding its making, we conclude that the parties intended to withdraw all claims for money damages, including punitive damages, and to seek only a determination of their respective rights in the easement and to injunctive relief.

Accordingly, the judgment is modified, on the law and the facts, (1) by deleting from the first decretal paragraph thereof the words "of the four-wheel vehicles", and (2) by deleting the fourth decretal paragraph thereof which awarded the plaintiff punitive damages; as so modified, the judgment is affirmed, without costs or disbursements.

SULLIVAN, J. P., LAWRENCE and RITTER, JJ., concur.

Ordered that the judgment is modified, on the law and the facts, (1) by deleting from the first decretal paragraph thereof the words "of the four-wheel vehicles", and (2) by deleting the fourth decretal paragraph thereof which awarded the plaintiff punitive damages; as so modified, the judgment is affirmed, without costs or disbursements.