[936 NYS2d 125]

Kevin Gilliland et al., Respondents, v Acquafredda Enterprises, LLC, et al., Appellants.

First Department, December 20, 2011

20

## APPEARANCES OF COUNSEL

*Rothkrug Rothkrug & Spector, LLP*, Great Neck (*Simon H. Rothkrug* of counsel), for appellants.

*Simon, Eisenberg & Baum, LLP*, New York City (*Robert F. Moraco* and *Eric M. Baum* of counsel), for respondents.

## OPINION OF THE COURT

RENWICK, J.

The speaker in Robert Frost's metaphorical poem *Mending Wall* ruminates over his neighbor's stolid assumption that "[g]ood fences make good neighbors."[1] Nonetheless, the adage's message has been sanctioned by tradition. Good fences may indeed make good neighbors. However wise Frost's thoughts on

---

1. Robert Frost published *Mending Wall* in 1914; it appeared in his second collection of poetry, North of Boston.

neighbor relations might be, the practicality of his aphorism remains an open question today, as highlighted by the facts of this case involving a contentious dispute among "neighbors" over a fence.

The parties are the owners of properties situated on Casler Place in the Schuyerville section of the Bronx. The properties are part of the neighborhood peninsula of Throgs Neck, which is bounded on the west by Westchester Creek and extends south into the Long Island Sound. Casler Place is a short street that runs from Pennyfield Avenue east to the shore of the Long Island Sound. Defendants own the property on both sides of the street at the eastern end of Casler Place, fronting the beach. The not-so-neighborly conflict erupted in 2008 when defendants erected a fence running from north to south across Casler Place, thereby preventing access to the shore. At issue here are the parties' respective property rights, i.e. plaintiffs' rights to access the shore through the area where the fence stands, and defendants' right to maintain that fence upon property they claim to own.

The parties' properties, among many others, were once vested in a common owner. In 1928, a large tract of Schuyerville was owned by Locust Point Estate, Inc., a real estate venture which subdivided the property into separate residential parcels. On January 18, 1928, Locust Point recorded a Declaration creating easements for six private streets, including Casler Place, in an area described as being "bounded . . . on the West by . . . Old Fort Schuyler Road [now known as Pennyfield Avenue], . . . and on the East by the [original] high water line of . . . Long Island Sound." The Declaration provides that Locust Point "creates, establishes and sets apart private roads and easements for ingress and egress . . . and hereby grants and conveys to said grantees, their successors, heirs and assigns forever permanent easements of light, air and access in, on and over [the six] parcels of land." These six streets were all described as bounded "on the West by the easterly side of Old Fort Schuyler Road [now known as Pennyfield Avenue], . . . and on the East by the high water line of Hammonds Cove on Long Island Sound."

In 1986, the homeowners of Casler Place petitioned the City of New York to dedicate Casler Place as a legal city street mainly because the cost of repairing the street presented a severe hardship. By letter dated May 7, 1986, the City dedicated "Casler Place from Pennyfield Avenue to a point 245 feet east of the east building line of Pennyfield Avenue . . . to public use as a

public way." The end of Casler Place east of the described boundary did not become a public street.

By summons and complaint dated October 27, 2009, plaintiffs, all of whom own property or reside on or near Casler Place, commenced this action against defendants Susan and Thomas Acquafredda. Plaintiffs alleged that in 2006, defendants began constructing two multi-family homes at 3093-3095 Casler Place. By 2008, defendants were allegedly constructing seawalls and a fence going across Casler Place, which "interfered with and prevented plaintiffs' access to the public beach area at the end of Casler Place." Plaintiffs further alleged that at least part of the construction was on land not owned by defendants, and that plaintiffs and the public had a right of access to the public beach by virtue of an easement by grant and an easement by prescription.

Plaintiffs now seek a declaration "that plaintiffs have an easement to access the beach area at the end of Casler Place, and that defendants do not have the right to obstruct plaintiffs' access, and perform construction work on said beach area." Additionally, plaintiffs seek money damages and an injunction preventing defendants from performing further construction or demolition.[2] Two days after commencing the action, plaintiffs moved, by order to show cause, for, inter alia, a preliminary injunction pursuant to CPLR 6301, seeking to prevent defendants from performing construction or demolition at Casler Place, blocking access to the beachfront property.

In support, plaintiffs submitted the affidavit of Turano, the president of a title insurance company, who states that the purpose of the 1928 Declaration was to allow the public the right to traverse Casler Place to enter the beachfront property. Turano further states that defendants' fence stands 239 feet east of Pennyfield Avenue and, as such, is on the public portion of Casler Place which is not owned by defendants. Plaintiffs also submitted the affidavit of architect Kovach, who attests that the fence lies "only 238 feet, 8 inches east from the east building line of Pennyfield Avenue." Kovach states that "approximately 7 linear feet of property . . . directly behind that fence, on which defendants had significant work performed, including the dredging up of beachfront property and the installation of a concrete seawall, was property of the public street that is Casler Place."

---

2. Plaintiffs also allege that the construction activity constitutes nuisance.

In further support of their motion, plaintiffs submitted their own affidavits. Rose Lillian Laurino, who lived on Dare Place from 1935 until 1955 and has resided on Casler Place since then, avers that she has used the Casler Place entrance to the beach continuously since 1935, and submitted photographs of herself in the 1940s and 1950s using the beach. Marija Gegovic, who resides on Pennyfield Avenue, states that she has been using Casler Place to access the shore for 20 years. Joseph Petriella and Melanie Petriella (husband and wife) state that they too have been doing so since 2004. Matthew Hohl avers that he has been using the end of Casler Place to access the beach since 1998; and, that he purchased his home, at least in part, because his real estate broker revealed that everyone on the block had easement rights to use the beach. Teresa and Kevin Gilliland state that they have been using the access since 1999.

In addition, plaintiffs submitted a deed dated September 9, 1993, by which defendants Susan and Thomas Acquafredda originally took title to their property (then lot 501, now 488) on Casler Place. Plaintiffs also submitted a deed dated October 10, 2007, by which defendants purported to convey lot 491 at 3095 Casler Place oddly to themselves. Finally, plaintiffs submitted photographs of the area before construction, during construction, and of the infamous fence.

Defendants opposed the motion by principally arguing that the easement created by the 1928 Declaration was solely intended for access to a public highway. In support of this narrow interpretation of the easement, defendants rely primarily upon the "Whereas clause" of the 1928 Declaration. The Declaration states, in pertinent part, that the grantor conveys "parts of [the] property to various grantees and desires to create private roads or easements over part of the property in order to give such grantees means of ingress or egress over such private roads to a public highway." Defendants contend that the 1986 dedication of Casler Place as a public highway is consistent with this narrow interpretation because the disputed land (the easternmost 45 feet of Casler Place leading up to the Long Island Sound shoreline) was expressly excluded from the dedication.

Defendants argue that they and their predecessors in title evinced this narrow intent by "always maintain[ing] a chain-link fence across Casler." Defendants submitted the affidavit of defendant Susan Acquafredda, who stated that she has maintained complete and exclusive access over the fence since 1993,

as evidenced by pictures.[3] Acquafredda notes that the picture of the fence after 1998 shows that the City installed a fire hydrant in front of the fence as well as a sign that states "End," which, Acquafredda argues, indicates "a clear acknowledgment of [her] possession, ownership and use of the entire area easterly of [her] fence." Finally, Acquafredda asserts that she owns the property upon which the fence stands, and submitted the aforementioned 1993 deed, and a survey dated September 21, 1994, purportedly indicating as much.

By order entered on or about April 23, 2010, Supreme Court granted plaintiffs a preliminary injunction, enjoining defendants from performing any construction or demolition work at the subject premises which blocks and prevents plaintiffs from accessing the beachfront property.[4] First, the court found that plaintiffs established a likelihood of success on the merits because the 1928 Declaration was unambiguous as to the scope of the easement, as extending from Old Fort Schuyler Road to the high water line of the Long Island Sound. Second, the court found that the 1986 dedication of Casler Place as a public road was irrelevant because the City only intended to assume maintenance and responsibility over the road. Third, the court found that plaintiffs established irreparable harm based on their inability to get to the shore. Finally, the court found that the equities tipped in plaintiffs' favor because "a good part of the problem with respect to access on the Casler Place strip is of the defendants' own making. She put up the wall." This appeal ensued, and we now affirm.

A party seeking a preliminary injunction must demonstrate, by clear and convincing evidence, (1) a likelihood of success on the merits, (2) irreparable injury absent the granting of the preliminary injunction, and (3) a balancing of the equities in the movant's favor (see CPLR 6301; Nobu Next Door, LLC v Fine Arts Hous., Inc., 4 NY3d 839, 840 [2005]). The decision to grant or deny a preliminary injunction lies within the sound discretion of the trial court (id.). Thus, this Court will not disturb a trial court's grant of a preliminary injunction absent an improv-

---

3. In reply, plaintiffs submitted affidavits from each of the plaintiffs which clarified that, although defendants replaced the fence in 1998, the fence did not restrict access to the shore until defendants modified it in 2008. Until then, they noted, the fence contained two access gates in it.

4. The order also enjoined defendants from selling or leasing the premises, and required defendants to maintain a certain protective fence atop the seawalls. The court directed plaintiffs to post an undertaking in the amount of $10,000.

ident exercise of discretion (*see Matter of Witham v Finance Invs., Inc.*, 52 AD3d 403 [2008]).

In this appeal, defendants only address the first of the preliminary injunction's three-pronged requirements, and make no argument that the balance of the equities favors them or that plaintiffs will not suffer irreparable harm absent the preliminary injunction. As to the first prong, plaintiffs were required to prove, by clear and convincing evidence, that they will likely prevail on their claim of a right to access the shoreline by virtue of an express easement, an easement by prescription, or otherwise.

Preliminarily, we find that the evidence casts serious doubts as to defendants' claim of title to the disputed area leading to the Long Island shoreline. Defendants claim that the deed dated October 10, 2007—in which they both act concomitantly as the grantors and grantees—expands their property to include the northern half of the actual street known as Casler Place. However, as plaintiffs point out, the September 9, 1993 deed, which originally granted defendants title to their property, described their property as beginning at "the northerly side" of Casler Place, and did not include any of the street itself. Of course, a grantor cannot convey what the grantor does not own. Thus, a deed from an entity that does not possess title or other conveyable interest is inoperative as a conveyance (Real Property Law § 245; *Green v Collins*, 86 NY 246 [1881]; *see e.g. Cornick v Forever Wild Dev. Corp.*, 240 AD2d 980, 981 [1997]). In view of these principles, the inescapable conclusion is that the anomalous transaction, the 2007 deed, appears to be a fraudulent conveyance.

In any event, irrespective of the legality of this transfer, we are not persuaded that the express easement in question should be interpreted so narrowly as to limit it solely to a right-of-way to the nearest public highway. Easements by express grant are construed to give effect to the parties' intent, as manifested by the language of the grant (*Dowd v Ahr*, 78 NY2d 469, 473 [1991], citing 2 Warren's Weed, New York Real Property, Easements, §§ 3.02, 17.03 [4th ed]). Thus, the language of the easement is controlling, and if a grant is specific in its terms, it is decisive of the limits of the easement (*Herman v Roberts*, 119 NY 37 [1890]; *Matter of City of New York*, 267 NY 212 [1935]).

In the instant dispute, the language of the grant supports plaintiffs' broader interpretation that the easement extends to

the shore. As noted above, in the granting provision of the 1928 Declaration, the grantor "creates, establishes and sets apart private roads and easements for ingress and egress." Further, it "grants and conveys to said grantees . . . forever permanent easements of light, air and access in, on and over all those strips and parcels of land," including Casler Place "bounded ·. . . on the West by Old Fort Schuyler Road, and on the East by the high water line of Hammonds Cove on Long Island Sound." It is this language—the so-called "metes and bounds" description—that is the critical portion of the easement, and not, as defendants suggest on appeal, the "Whereas clause."

Since the pertinent language is certain and unambiguous— that the easement extends to the shore—it is not necessary, as defendants suggest, to resort to an examination of the "Whereas clause" (*see Matter of Lawrence v 5 Harrison Assoc.*, 295 AD2d 131, 131 [2002] [rejecting defendant's argument that easement was limited according to language in "Whereas clause" describing its intent, where the easement "clearly described in [the] conveyance" was not so limited]). Indeed, where, as here, the intention as to the extent of an easement is affirmatively evidenced by certain and unambiguous language in the grant, a contrary intent may not be implied (*Alt v Laga*, 207 AD2d 971 [1994]). Plain language sometimes yields to the construction called for by the circumstances, in order to afford reasonable facilities for the enjoyment of an easement. However, no departure should be made from the terms of a conveyance where, as here, it would take from one party rights expressly granted and reserved and give them to others (*see Mandia v King Lbr. & Plywood Co.*, 179 AD2d 150, 158 [1992] [where "language in which the grant of the easement is couched is very broad," nothing restricted or qualified its use for other purposes than for a means of entrance and exit to property]).

██ Nor do we find any merit to defendants' argument that the easement created by the 1928 Declaration was extinguished by the 1986 dedication by the City. As noted, defendants argue that "[b]y petitioning the City, and accepting the City's declaration that the portion of Casler Place in front of [plaintiffs'] homes be a public way, the [e]asement came to an end," and Casler Place effectively became a public street owned by the City. Defendants, however, conveniently ignore the fact that the 1986 dedication only pertained to the first 245 feet of Casler Place from Pennyfield Avenue. Thus, plaintiffs' predecessors in interest cannot be deemed to have somehow conveyed those

portions of Casler Place east of the 245 feet to the City of New York by virtue of the petition and subsequent dedication.

 But the express easement was not the only ground available for granting a preliminary injunction. Plaintiffs also demonstrated a likelihood of success of the merits of their alternative claim that they possess an easement by prescription over the area where defendants' fence now stands for access to the shore. "An easement by prescription is generally demonstrated by proof of the adverse, open and notorious, continuous, and uninterrupted use of the subject property for the prescriptive period" (*Almeida v Wells*, 74 AD3d 1256, 1259 [2010]; *see also 315 Main St. Poughkeepsie, LLC v WA 319 Main, LLC*, 62 AD3d 690, 691 [2009]; *Frumkin v Chemtop*, 251 AD2d 449 [1998]).

Here, plaintiffs' affidavits, which were fully described above, established that plaintiffs and their predecessors in interest had openly and notoriously used the area where defendants' fence now stands for access to the shore since at least 1935. That evidence was sufficient to demonstrate that the right-of-way was openly, notoriously and continuously used to access the disputed area for the requisite 10-year period, thus giving rise to a presumption that the use was hostile and under claim of right (*see Kessinger v Sharpe*, 71 AD3d 1377, 1378 [2010]; *Gorman v Hess*, 301 AD2d 683 [2003]; *Solimini v Pytlovany*, 144 AD2d 801 [1988]). Thus, plaintiffs met their initial burden on the motion on this ground as well. Moreover, defendants' conclusory allegations, that they never allowed any property owner to use the area over the fence for access to the shore, was insufficient to deny a preliminary injunction.

As was the speaker in *Mending Wall* we are asked to walk the wall and examine the legal merits of plaintiffs' claim that defendants' wall exceeds the boundaries between unneighborly and illegal conduct. We are indeed convinced, within the context of a preliminary injunction, that plaintiffs have demonstrated a likelihood of success on the merits in their cause of action. "Something there is that doesn't love a wall." It is called an easement.

Accordingly, the order of Supreme Court, Bronx County (Edgar G. Walker, J.), entered on or about April 23, 2010, which granted plaintiffs' motion for preliminary relief enjoining defendants from, inter alia, performing any construction or demolition on the subject premises or otherwise preventing plaintiffs from access to the beachfront from Casler Place pending final determination of this action, should be affirmed, with costs.

TOM, J.P., ANDRIAS, CATTERSON and ACOSTA, JJ., concur.

Order, Supreme Court, Bronx County, entered on or about April 23, 2010, affirmed, with costs.