Liberty Sq. Realty Corp. v The Doe Fund, Inc. (2021 NY Slip Op 07082)





Liberty Sq. Realty Corp. v The Doe Fund, Inc.


2021 NY Slip Op 07082


Decided on December 21, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 21, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta
Dianne T. Renwick Barbara R. Kapnick Tanya R. Kennedy Manuel Mendez


Index No. 302595/11 Appeal No. 14557-14557A Case No. 2019-3018, 2019-01036, 2020-00401 

[*1]Liberty Square Realty Corp., Plaintiff-Appellant,
v
The Doe Fund, Inc., et al., Defendants-Respondents.



Plaintiff appeals from an order of the Supreme Court, Bronx County (Lewis J. Lubell, J.), entered on or about April 30, 2018, which, insofar as appealed from as limited by the briefs, granted the motion of defendants The City of New York and the New York City Department of Housing Preservation and Development to dismiss the complaint as against them and the cross motion of defendants The Doe Fund, Inc. and Boricua Village Housing Development Fund Co., Inc. to dismiss the complaint as against them. Plaintiff also appeals from the order, same court and Justice, entered on or about November 21, 2019, which, insofar as appealed from as limited by the briefs, granted the motion for reargument, and adhered to the prior determination.




Yoram Nachimovsky, PLLC, New York (Yoram Nachimovsky of counsel), for appellant.
Georgia M. Pestana, Corporation Counsel, New York (Jamison Davies and MacKenzie Fillow of counsel), for municipal respondents.
Goldberg Segalla, LLP, White Plains (William T. O'Connell of counsel), for The Doe Fund, Inc. and Boricua Village Housing Development Fund Co., Inc., respondents.



RENWICK, J., 


This appeal concerns the Old Bronx Borough Courthouse, which occupies an entire irregular five-sided block, in the Melrose neighborhood of the Bronx. The block is bounded by Third Avenue on the South and East, Brook Avenue on the West, and East 161st Street on the North. The Old Bronx Borough Courthouse ceased operating as a courthouse in the 1970's and the New York City Landmarks Preservation Commission declared the building a landmark in 1981. In 1998, plaintiff Liberty Square Realty purchased the Old Courthouse from the City. In 2011, plaintiff commenced this action seeking primarily to settle a boundary dispute with defendants Boricua Village Housing Development Fund Compan [FN1] and the City of New York. The area in dispute is the former 161st Street, between Brooks and Third Avenue that abuts the northern facade of the Old Courthouse. Before conveying the Old Courthouse to plaintiff, in April 1994, the City had officia [FN5]
 this block of 161st Street, thereby taking it off the street map as part of an urban renewal plan. Plaintiff claims that the City transferred property rights over the demapped street to it, namely the sidewalk abutting the Old Courthouse on 161st Street and one-half of the demapped street. However, after the conveyance of the Old Courthouse to plaintiff, the City conveyed the demapped street to Boricua Village's predecessor  to be used as pedestrian-friendly open space — concomitantly with the adjacent empty lot  to be used for development of affordable housing. This case raises the interesting and important issue of what rights an abutting property owner possesses over a demapped street.
Factual and Procedural Background
To fully capture the nature of this action, it's important to place plaintiff's predicament and its acquisition of the Old Courthouse in its proper context — namely, that the street [*2]in question was already demapped when plaintiff acquired the Old Courthouse. In 1998, plaintiff purchased the Old Bronx County Courthouse at a public auction. The auction brochure describes the property by block and tax lot and notes that it is a five-story building also known as 513 East 161st Street. The property was "being sold 'as is.'" The tax map of the property, Lot 35 of Block 2365, shows that only the building is contained within the tax lot specified. After the auction, plaintiff and the City executed a deed transferring the property. The deed memorializes the sale as conveying to plaintiff the land "designated on the Tax Map of the City of New York" as "Block 2365, Lot/s 35 A/K/A 513 East 161st Street." Likewise, plaintiff's title insurance certificate describes the property as the land "known and designated on the Tax Map of the City of New York as Block 2365 Lot 35 Borough of The Bronx." Other than the tax map, no map or other document is referenced in the deed or the title insurance report.
In 1994, four years before the sale of the Old Courthouse to plaintiff, the City implemented the Melrose Commons Urban Renewal Plan (The Plan), which addressed the dilapidated area around the Old Courthouse. The Plan involved several land-use actions that had to be approved pursuant to the City'[FN5]
In particular, the City "demapped" a segment of East 161st Street between Third Avenue and Brook Avenue, which abuts the northern side of the Courthouse. As discussed in The Plan, demapping a street refers to the "elimination, discontinuance and closing" of the street to permit it to be sold, developed, or otherwise used for a purpose other than as a public street. The map included with The Plan identifies the portion of East 161st Street in dispute as the "discontinued and closed portion" of the street.
The City Planning Commission resolution (dated April 25, 1994) supporting The Plan, including the demapping of several streets, notes that the streets were to be "eliminated, discontinued, and closed" to "facilitate the construction of new residential buildings and the development of open space." In particular, the resolution explains that the portions of the streets to be closed "are not needed for circulation or traffic purposes in the area." Under ULURP, the Commission's resolution including the demapping of East 161st Street was the subject of several public hearings and votes, and both the Commission's resolution and the City Council's resolution were matters of public record. Nine years after plaintiff's acquisition of the Old Courthouse, the City, in 2007, conveyed several lots north of the Courthouse to defendant Boricua Village's predecessor, to build an affordable housing and college complex, consistent with the goals of The Plan. Among the properties conveyed was the demapped portion of the former East 161st Street abutting the Courthouse to the north. Like the Urban Renewal Plan, the conveyance of [*3]the land to Boricua Village'[FN5]
including multiple public hearings, a vote of the City Council, and mayoral approval. The deeds conveying the land, including the demapped portion of East 161st Street bordering the Courthouse, were executed on November 5, 2007.
In early January 2008, a large-scale housing development for moderate and middle-income families, called Boricua Village, began to be developed next to plaintiff's property. Plaintiff asserts that the construction interfered with its use of East 161st Street. Prior to construction, plaintiff alleges, the demapped 161st Street continued to be used for vehicular traffic, including public transportation (MTA buses). After Boricua Village was completed, the demapped portion of East 161st Street was converted to a pedestrian-friendly open space in early 2011.
Soon thereafter, on March 22, 2011, plaintiff commenced this action [FN5]
plaintiff avers that it is the owner of part of the demapped 161st Street abutting its property, namely the sidewalk and the part of 161st Street next to its building, or at least that it had an easement over the demapped street. Specifically, plaintiff alleges that when its president and its lawyer appeared at the closing on December 22, 1998, the City offered a deed identifying the property only as Block 2365, Lot 35 and an accompanying printout of a tax map. Its president and lawyer objected to the lack of a metes and bounds description and were ready to refuse to close. After consulting with others, the City's attorney allegedly drew an irregular circle on the tax map and indicated to its president and lawyer that the circle outlined the property and its easements. The deed and the map with the circle were recorded by plaintiff. The circle includes the demapped street, encompassing East 161st Street between Brook and Third Avenues, as well as additional areas.
Both Boricua Village and the City moved to dismiss the action on three different grounds: 1) the complaint failed to state a cause of action; 2) documentary evidence established a defense to the action as a matter of law; and 3) the action was barred by the statute of limitations. The motion court dismissed plaintiff's inverse condemnation claim as barred by the three-year statute of limitations. The court dismissed the rest of the action on the ground that documentary evidence established a defense to the action as a matter of law.
Preliminarily, the motion court "assumed the truth of the plaintiff's allegations, that at the time of the conveyance, the City's closing attorney drew an irregularly shaped circle on tax map around the parcel to indicate the property and easement that were being conveyed." The motion court, however, noted that "the hand-drawn marking encompasses the surrounding street as [*4]drawn on the map, including East 161st Street, and then extends outward from the irregularly shaped circle to encompass East 161st Street across Brook Avenue, up to Washington Avenue." Ultimately, the motion court found that such evidence constituted "extrinsic evidence" and as such was insufficient to establish property rights or at least an easement over the demapped 161st Street. The motion court also granted reargument, and adhered to its prior determination. As it explained in its order on the reargument motion, the court reasoned:
"This Court held that a deed, unambiguous on its face, cannot be varied by extrinsic evidence. Further, the Court noted that the drawing was unexplained and inexplicably extended to and encompassed 161st Street between Washington and Brook Avenues, which has no relation to the plaintiff's property. The document in itself it [sic] has no intrinsic meaning and it created no ambiguity in the deed. The Terms of Sale specifically excluded any reliance by plaintiff on any oral or written representations as to the state of title and the property conveyed. The diagram could hardly be termed an "express easement" as it contained no words of conveyance, no demarcation of any easement or any other discernable property interest, and identified no parties or any other cognizable meaning. Lastly, the Court held in this regard that the representations of the closing attorney could hardly undo the filed map changes undertaken after numerous public hearings, by the duly appointed executive and legislative branches of New York City government, in accordance with the New York City Charter and the Administrative Code."
Discussion
Before addressing the issue of whether the action was properly dismissed based upon documentary evidence, we must first examine the threshold question of whether the action was barred by the statute of limitations. Both defendants, Boricua Village and the City, interposed the statute of limitations defense in their respective answers as dispositive of the entire action. Likewise, they moved to dismiss the entire action on statute of limitations grounds. Their dismissal motions on this ground were partially denied sub silentio when the motion court found only that "plaintiff's claim sounding in inverse condemnation is barred by the three-year statute of limitations." The motion court did not explicitly address whether plaintiff's remaining claims for property damage, property rights, and an easement, were barred by the statute of limitations. Defendants, however, now raise the statute of limitations defense as a ground for dismissal of the entire action.
On this appeal, plaintiff concedes that the statute of limitations for its claims of property damage and inverse condemnation is three years, and this action was commenced more than three years after both claims accrued (see CPLR 214[4]). However, plaintiff contends that the statute of limitations should be tolled by equitable estoppel. Equitable estoppel [*5]is an extraordinary remedy which applies where a party is prevented from filing an action within the applicable statute of limitations due to his or her reasonable reliance on deception, fraud or misrepresentations by the other (see Bacon v Nygard, 140 AD3d 577 [1st Dept 2016]; East Midtown Plaza Hous. Co. v City of New York, 218 AD2d 628 [1st Dept 1995]). Plaintiff, as the moving party, bore the burden of proving by clear and convincing evidence that defendants engaged in affirmative misconduct that prevented it from timely asserting its claims of property damage and inverse condemnation (Zumpano v Quinn, 6 NY3d 666, 674 [2006]).
Plaintiff's allegations do not support any estoppel here. In that regard, plaintiff claims that the City "stealthily" transferred the demapped portion of East 161st Street and that the City and Boricua Village's predecessor "concealed that transfer until sometime in 2010 by allowing [plaintiff] to essentially use E. 161st Street as it had until then." Such allegations, however, are "mere silence or failure to disclose" (Ross v Louise Wise Servs., Inc., 8 NY3d 478, 491 [2007] [internal quotation marks omitted]) rather than the "affirmative wrongdoing" required for equitable estoppel (Zumpano v Quinn, 6 NY3d at 673-[FN5] Thus, defendants are not precluded under doctrine of equitable estoppel from asserting the statute of limitations defense as to the claims of property damage and inverse condemnation, which we find are time-barred.
The same cannot be said for the remaining claims asserting property rights and an easement over the demapped portion of 161st Street. While plaintiff refers to its inability to use the demapped 161st Street interchangeably as an "inverse condemnation" and as inconsistent with the property and easements rights the City granted to it, "[i]n considering the true nature of a cause of action, the court may look beyond how the claim is labeled by a plaintiff" (Matter of Part 60 RMBS Put - Back Litig., 195 AD3d 40, 53 [1st Dept 2021]; see also Bleecker St. Health & Beauty Aids, Inc. v Granite State Ins., Co., 38 AD3d 231, 233 [1st Dept 2007]). "'Generally, the period of limitations to be applied should depend upon the form of the remedy [sought] rather than the theory of liability'" (Foti v Noftsier, 72 AD3d 1605, 1606-1607 [4th Dept 2010], quoting Rahabi v Morrison, 81 AD2d 434, 439 [2d Dept 1981]; see also Sears, Roebuck & Co. v Enco Assoc., 43 NY2d 389, 394—395 [1977]; Matter of Paver & Wildfoerster [Catholic High School Assn.], 38 NY2d 669, 676 [1976]). Thus, the choice of the appropriate statute of limitations turns on "'the reality, and the essence of the action and not its mere name'" (Morrison v National Broadcasting Co., 19 NY2d 453, 459 [1967], quoting Brick v Cohn-Hall-Marx Co., 276 NY 259, 264 [1937]). After considering the complaint and the affidavit of plaintiff's principal, submitted in opposition to defendants' motions to dismiss, it is clear that plaintiff's boundary dispute concerns [*6]what rights each party has viz-a-viz the demapped 161st Street that borders their respective properties.
A boundary dispute over a party's rights to property constitutes essentially an action seeking to remove a "cloud" on title. Removal of a "cloud" on title is an equitable remedy. It is governed by the 10-year statute of limitations where the owner is out of possession (see Ford v Clendenin, 215 NY 10 [1915]; Elam v Altered Ego Realty Holding Corp., 114 AD3d 901 [2d Dept 2014]). However, where, like here, the owner is in possession, the right of action to remove a cloud on title is a continuous one accruing from day to day, and this right is not barred by the statute of limitations until the cloud is continued without interruption for a length of time sufficient to effect a change of title as a matter of law (see Faison v Lewis, 25 NY3d 220, 223-224 [2015]; Orange and Rockland Util. v Philwold Estates, Inc., 52 NY2d 253 [1981]). "The reason for this rule is that while the owner in fee continues subject to an action, proceeding, or suit on the adverse claim, he or she has a continuing right to the aid of a court of equity to ascertain and determine the nature of such claim and its effect on his or her title, or to assert any superior equity in his or her favor" (17A Carmody-Wait 2d § 102:3). Accordingly, the owner may wait until his or her possession is disturbed, or his or her title is attacked, before taking steps to vindicate his or her right (Ford v Clendenin, 215 NY at 16-17). "The requirement of prompt action is imposed as a policy matter upon persons who would challenge title to property rather than those persons who seek to quiet title to their land" (Orange and Rockland Util. v Philwold Estates, Inc., 52 NY2d at 261).
Since the property rights and easements claims over the demapped 161st Street are not barred by the statute of limitations, we must examine whether the claims are still subject to dismissal based upon documentary evidence. On a motion to dismiss pursuant to CPLR 3211, the court must accept as true the facts alleged in the complaint and any submissions in opposition to the dismissal motion (see 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 151—152 [2002]). "Dismissal under CPLR 3211(a)(1) is warranted 'only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law'" (id. at 152, quoting Leon v Martinez, 84 NY2d 83, 88 [1994]). Applying these standards to this case, for the reasons explained below, we conclude that the documentary evidence precludes as a matter of law all of plaintiff's property rights and easement claims, except the claim of easement by necessity.
To be sure, plaintiff's predicament does not lack intuitive appeal. Indeed, what makes this case interesting is that under normal circumstances plaintiff would have had a strong case for the right to access to the East 161st Street block abutting its property. An abutting owner has two distinct [*7]kinds of rights in a public street. A public one which he or she enjoys in common with all other members of the public; and certain private rights which arise from his ownership of property contiguous to a street (Woodruff v Paddock, 130 NY 618 [1892]). It is well established that "[a]n owner of land adjoining a highway or street possesses, as an incident to such ownership, [an] easement[ ] of . . . access, from and over the highway in its entirety to every part of his or her land, regardless of whether the owner owns the fee of the highway or street itself" (Matter of Scoglio v County of Suffolk, 85 NY2d 709, 712 [1995]), even when it is but a paper street (see Perlmutter v Four Star Dev. Assoc., 38 AD3d 1139, 1140 [3d Dept 2007]; see also Fiebelkorn v Rogacki, 280 App Div 20, 21-22 [4th Dept 1952], affd 305 NY 725 [1953]). "The principle underlying this rule is, that any permanent depreciation in value caused by these interferences with the rights of the abutting owner cannot be regarded as falling reasonably within the limits of the public rights, and therefore were not paid for when the land was taken for highway purposes" (Joseph Rasch, Robert F. Dolan, NY Law & Practice of Real Property § 20:18 [2d ed., June 2021 Update]).
This important right of access, i.e., the right of ingress and egress, is not the mere access to the street from one's home or business, but includes a certain convenience in the use of one's property without unreasonable hindrance or interruption (see e.g. Matter of Larkin Co. v Schwab, 242 NY 330 [1926]; Matter of Ken Mar Dev., Inc. v Department of Pub. Works of City of Saratoga Springs, 53 AD3d 1020 [3d Dept 2008]; M. Parisi & Son Const. Co., Inc. v Adipietro, 21 AD3d 454 [2d Dept 2005]). It extends to having the premises accessible to patrons, clients, customers and visitors generally (see e.g. Matter of Mar Dev., Inc., 53 AD3d at 1020 [curb-lowering permit could not be denied where curb-cuts were necessary to use and development of premises, for which building permit had been granted as an authorized use in a business zone]). Accordingly, the measure of the right of an abutter to access to a street is reasonable ingress and egress under all circumstances (see M. Parisi & Son Const. Co., Inc. v. Adipietro, 21 AD3d at 456).
This case, however, cannot be viewed from the perspective of an owner of property abutting a public street. There is an obvious and material distinction between the normal sale by a private seller of private property abutting a city street and the sale by a municipality under the unique circumstances of this case. We cannot ignore that the City owned the common lands abutting the demapped street, including the Old Courthouse conveyed to plaintiff. The City owned the Old Courthouse, therefore no rights of a property owner abutting a public street were implicated when the City officially demapped the street abutting the Old Courthouse. As such, the City was not required to provide compensation to any [*8]owner for the loss of access to the demapped street. Once the demapping occurred, after a lengthy process, including community input and approval by the City Council and the Mayor, the portion of 161st Street abutting the Old Courthouse was extinguished as a public street. The empty lot, which became Boricua Village, and the demapped street were "mapped out" for municipal purposes and advantage, and for the area's improvement by future grantees pursuant to The Plan. Plaintiff took title to the Old Courthouse only after East 161st Street had been demapped pursuant to this urban renewal plan. This involved a number of land-use actions that had to be approved pursuant to the ULURP, as well as the City Council and the Mayor. These were matters of public record.
Indeed, plaintiff does not argue that the aforementioned abutting-owners common-law rights apply to the facts of this case. Instead, plaintiff argues that the deed and the map with the circle that were recorded by plaintiff, conveyed to plaintiff property rights or at least an easement over the demapped 161st Street. The construction of deeds generally presents a question of law for the court to decide (see Lewis v Young, 92 NY2d 443, 449 [1998]; Staine v Summit Place, Inc., 40 AD3d 330 [1st Dept 2007]). Deeds must be "construed according to the intent of the parties, so far as such intent can be gathered from the whole instrument and is consistent with the rules of law" (Real Property Law § 240[3]). "The 'intent' to which [section 240 (3)] refers is the objective intent of the parties as manifested by the language of the deed" (Margetin v Jewett, 78 AD3d 1486, 1488 [4th Dept 2010]). "[A] court will only look outside the four corners of the deed to establish the intent of the parties when . . . that instrument is found to be ambiguous" (Pepe v Antlers of Raquette Lake, Inc., 87 AD3d 785, 787 [3d Dept 2011]; see also Jhae Mook Chung v Maxam Props., LLC, 73 AD3d 505, 505-506 [1st Dept 2010] ).
Here, there is nothing ambiguous about the deed conveying title to plaintiff over the Old Courthouse. The deed's pertinent language conveys:
"All that those certain piece/s or parcel/s of land, together with any improvements thereon, situate, lying and being in the Borough of BRONX, designated on the Tax Map of the City of New York, for the Borough of BRONX, as said Tax Map was on Current [sic] Block 2365, Lot/s 35 A/K/A 513 East 161st Street."
The deed's reference to the "Tax Map" is not ambiguous. An agreement is unambiguous if "on its face is reasonably susceptible of only one meaning" (Greenfield v Philles Records, 98 NY2d 562, 570 [2002]). The only reasonable meaning of "as said Tax Map was on Current" is the current tax map, i.e., the tax map in effect as of the date of the deed. Indeed, a description of the property by Block and Lot, along with a reference to the current Tax Map, constitutes a clear reference to the boundaries of the parcel of land being conveyed. There is no allegation here [*9]that the deed's description of the property based upon "Block 2365, Lot/s 35 A/K/A 513 East 161st Street," and a reference to the current Tax Map, failed to clearly define the boundaries lines of the property. On the contrary, if one looks to the current Tax Map in reference to "Block 2365, Lot/s 35 A/K/A 513 East 161st Street," one would find a property bounded by Third Avenue on the South and East, Brook Avenue on the West, and East 161st Street on the North.
In fact, plaintiff acknowledges that the altered Tax Map with the "hand-drawn circle" was not intended to resolve any ambiguity. Instead, plaintiff argues that "the Tax Map [with the hand-drawn circle] was more than a Tax Map." According to plaintiff, such altered Tax Map "was a writing by the City that was given to the Plaintiff in order for the Plaintiff to accept the deed in place of a more formal metes and bounds description."[FN5]
description was obviated by the reference to the Current Tax Map, which clearly and unambiguously describes the boundaries of the property. Indeed, the deed contains no reference to the altered Tax Map, with the hand-drawn circle, purportedly intended to change the boundaries of the property. Nor is there any indication on the altered Tax Map of the circle's purpose. If the parties wanted to change the boundaries of the property described in the deed and Current Tax Map to include a surrounding demapped street, they could easily have done so by making such notation on the deed and altered Tax Map.
Plaintiff, however, notes that the deed also refers to an easement, namely that it was "[s]ubject to. . .easements affecting the subject property." However, it would be unreasonable to treat such language as a reference to an easement benefiting plaintiff when the quoted language obviously means easements that might adversely affect the conveyed property, e.g., if another property had an easement across Block 2365/Lot 35. In context, the deed's reference to an easement constitutes boilerplate language and it thus carries no legal significance that there were no easement rights adversely affecting the conveyed property.
The finding here that the deed of conveyance did not expressly or impliedly grant plaintiff either property rights or an easement over the demapped 161st Street does not end our inquiry because plaintiff also alleges that it has either an easement by prescription or an easement by necessity  neither of which depended upon any express or implied grant or agreement. Plaintiff, however, is not entitled to an easement by prescription. Plaintiff's own allegations negate the adverse or hostile element required to establish a prescriptive easement (see Kessinger v Sharpe, 71 AD3d 1377, 1378 [4th 2010]; Gorman v Hess, 301 AD2d 683 [3d Dept 2003]). Plaintiff alleges that, from the time it purchased the courthouse in 1998 until at least 2010, vehicular traffic including bus lines still existed on the allegedly [*10]demapped street. Thus, if City buses were using East 161st Street, plaintiff's use of that street through 2010 was hardly adverse to the City — it did not invade or infringe on the City's rights (see Gilliland v Acquafredda Enters., LLC, 92 AD3d 19, 27 [1st Dept 2011]).
We reach a different result with regard to the claim of easement by necessity. The party asserting an easement by necessity bears the burden of establishing by clear and convincing evidence that there was a unity and subsequent separation of title, and that at the time of severance an easement over the servient estate's property was necessary (see Huggins v Castle Estates, 36 NY2d 427, 430 [1975]). Significantly, "the necessity must exist in fact and not as a mere convenience" (Heyman v Biggs, 223 NY 118, 126 [1918]). However, to satisfy the necessity element, the proponent need only establish "reasonable," not absolute, necessity (Board of Mgs. of Atrium Condominium v West 79th Street, Corp., 2 AD3d 246 [1st Dept 2003]; see also Monte v DiMarco, 192 AD2d 1111 [4th Dept 1993], lv denied 82 NY2d 653 [1993]).
Although, at this pre-discovery stage, the facts must be developed, plaintiff's present factual allegations to indicate that an easement may be reasonably necessary. First, plaintiff alleges that the Old Courthouse "has only one loading dock for the entire building of 110,000 square feet" and that such "loading dock is located on East 161st Street." Second, plaintiff alleges the "building was designed to operate with the loading dock as the exclusive method for clearing large loads, including normal trash, from the building." Third, plaintiff alleges that because the Old Courthouse was officially designated a landmark, "its exterior cannot be altered in any way" and that switching the loading dock to another side of the building would entail a forbidden exterior change.
Although defendants seek to question the validity of plaintiff's allegations of necessity, arguing that plaintiff retains access to the public streets on the other sides of the building, and the Courthouse is not landlocked, those are factual issues and issue has yet to be joined. At this juncture, however, this Court is required to "'accept the facts as alleged in the complaint as true, accord plaintiff [] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory'" (Sinensky v Rokowsky, 22 AD3d 563, 564 [2d Dept 2005], quoting Leon v Martinez, 84 NY2d at 87-88; see also Miglino v Bally Total Fitness of Greater N.Y., Inc., 20 NY3d 342, 351 [2013]). However, the claim should be reinstated only against Boricua Village, the current owner of the demapped East 161st Street. The City has no continuing interest in the demapped street and adjacent property because it conveyed them to Boricua Village's predecessor in 2007. Thus, a claim for an easement by necessity does not lie against the City.
Accordingly, the order of the Supreme [*11]Court, Bronx County (Lewis J. Lubell, J.), entered on or about April 30, 2018, which, insofar as appealed from as limited by the briefs, granted the motion of defendants The City of New York and the New York City Department of Housing Preservation and Development to dismiss the complaint as against them and the cross motion of defendants The Doe Fund, Inc. and Boricua Village Housing Development Fund Co., Inc. to dismiss the complaint as against them, should be modified, on the law, to deny the motion as to the claim for an easement by necessity as against The Doe Fund and Boricua Village, and otherwise affirmed, without costs. The appeal from the order of the same court and Justice, entered on or about November 21, 2019, which, insofar as appealed from as limited by the briefs, granted the motion for reargument, and adhered to the prior determination, should be dismissed, without costs, as academic.
Order, Supreme Court, Bronx County (Lewis J. Lubell, J.), entered on or about April 30, 2018, modified, on the law, to deny the motion as to the claim for an easement by necessity as against The Doe Fund and Boricua Village, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered on or about November 21, 2019, dismissed, without costs, as academic.
Opinion by Renwick, J. All concur.
Acosta, P.J., Renwick, Kapnick, Kennedy, Mendez, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 21, 2021



Footnotes

Footnote 1: 1
Boricua Village Housing Development Fund Company is an affiliate of codefendant Doe Fund, Inc. For clarity both defendants are referred to here as Boricua Village.

Footnote 5:ping a street refers to the elimination, discontinuance and closing of a street.

Footnote 5:w York City Charter that is invoked when a land-use proposal will affect certain legal protections afforded to the existing area and/or its inhabitants (see New York City Charter § 197-c). Basically, ULURP involves a series of consultations at the community and borough level followed by binding decisions by the Mayor and City Council (see
Uniform Land Use Review Procedure (ULURP), DEPT OF CITY PLANNING CITY OF N.Y., http://www.nyc.gov/html/dcp/html/luproc/ulpro.shtml [last accessed Dec. 8, 2021]). At the conclusion of the review process, any party with a "generally cognizable interest" in the use of the property may petition the court to overturn the decision pursuant to article 78 of the Civil Practice Law and Rules (see CPLR 7801; Matter of Carnegie Hill Neighbors, Inc. v City of New York, 188 AD3d 560 [1st Dept 2020]).

Footnote 5:nning Commission's resolution (dated May 9, 2007), the new ULURP was mandated because of the "Amendment to the Melrose Commons Renewal Plan to facilitate Boricua Village" and other related developments. 

Footnote 5:rty"; and (b) "Defendants' negligent supervision of the construction [of Boricua Village. . . has caused extensive damage. . . including . . .defacing of the walls of [plaintiff's] Property and damage to [its] faÇade. . . as well as settling and cracking of the foundations."

Footnote 5:6
Moreover, as previously indicated, it was a matter of public record that the subject street had been demapped.

Footnote 5:description of a parcel of land that is measured in distances, angles, and directions.